**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| WALTER McFADDEN, *Plaintiff,* v. JENNIFER HOBBY, *Defendant.* | No. 3:19-cv-01804 (VAB) |

**RULING AND ORDER ON MOTION TO DISMISS**

Walter McFadden ("Plaintiff") has sued Jennifer Hobby, also known as Jennifer Hobby-Brame, ("Defendant") for discrimination on the basis of race and wrongful discharge. Compl., ECF No. 1 (Nov. 13, 2019).

Ms. Hobby has filed a motion to dismiss all claims. Def.'s Mot. to Dismiss, ECF No. 16 (Mar. 9, 2020) ("Mot.").

For the reasons stated below, Defendant's motion to dismiss is **GRANTED** with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Allegations

Walter McFadden allegedly worked for the Connecticut Department of Motor Vehicles ("DMV") for approximately thirteen years before being terminated on or around February 22, 2017. Compl. at 7-8.[1]

Mr. McFadden is an African American man and allegedly filed a complaint against "two white female coworkers" in February 2016. *Id.* at 7.

[1] Unless otherwise noted, the Court cites to the ECF pagination of all documents referenced in this opinion.

Around May 2016, Mr. McFadden allegedly met with Human Resources ("HR") with the belief that the meeting "was for [his] complaints filed against his [two] coworkers," however those complaints allegedly were not addressed during the meeting. *Id*. Instead, Mr. McFadden allegedly was told about "complaints filed against [him]" that he allegedly "never saw or was made aware of" before the meeting. *Id*. During the meeting, Mr. McFadden allegedly asked Human Resources "why they violated policy[,] by not making [him] aware of the[] complaints" and was allegedly told he was not informed of the complaints "due to time constraints." *Id*.

Around October 2016, Mr. McFadden allegedly was the last employee to receive his performance review. *Id*. When he eventually saw his review, it allegedly "said [he] had numerous complaints pending a discipline and [he] was given an unsatisfactory rating," which "caused [him] to be no longer eligible for a Head Motor [V]ehicle Examiner position." *Id*. at 8. Mr. McFadden allegedly had not been shown any of the complaints" and "never had an opportunity to write [his own] account of what happened." *Id*. at 9.

Around December 2016, the Vice President of his Union, Rosetta Anderson, allegedly told Mr. McFadden that "Jennifer Hobby of HR was on the phone and . . . would be meeting with [Mr. McFadden] soon." *Id*. at 10. Mr. McFadden allegedly also had been told that Ms. Hobby would not let him see the complaints filed against him because he would "[a]ttack the [c]ustomers [since] their name[s] and address[es] [were] on the complaints." *Id*. After being unable to convince Ms. Hobby or Ms. Anderson to show him the complaints, Mr. McFadden allegedly told Ms. Anderson that he no longer wanted her to be his union representative. *Id*. at 12.

Earlier, Mr. McFadden allegedly "had been approved [] by management [to take] . . . []Personal Leave Time[]." *Id*. at 19. On or around February 22, 2017, after allegedly returning to

work from personal leave, Ms. Anderson allegedly told Mr. McFadden that the DMV's Head of Human Resources and the Division Manager wanted to speak with him. *Id.* at 13. Mr. McFadden allegedly told Ms. Anderson that he would not attend a meeting and could not be forced to do so. *Id.* Mr. McFadden, then, allegedly said he was going to take his fifteen-minute break and left the building, while the Head of Human Resources and Ms. Anderson allegedly tried to speak with him as he left. *Id.* at 14.

Mr. McFadden alleges that when he tried to reenter the building fifteen minutes later, his "scan card did not work." *Id.* After trying to enter through another door, Mr. McFadden allegedly was told by the Division Manager that he "was not allowed back in the building[,] . . .[needed] to leave the property[,] . . . . [and was] terminated." *Id.* (internal quotation marks omitted). Mr. McFadden allegedly "got into [his] vehicle and went directly to the [Connecticut Commission on Human Rights and Opportunities ("CHRO")] and told them what . . . happened." *Id.* at 15.

Around March 2017, Mr. McFadden allegedly met with a "service representative" by the name of Tom Sellas. *Id.* Mr. Sellas allegedly told Mr. McFadden that "going to the CH[RO] and the [Equal Employment Opportunity Commission ("EEOC")] was a waste of time because they ha[d] no power and only [Mr. Sellas] could get [Mr. McFadden] his job back." *Id.* Mr. Sellas also allegedly told Mr. McFadden that there were only "[t]wo meaningless complaints [against him] that . . . were nothing [he] would lose [his] job over." *Id.* at 16. When Mr. McFadden allegedly told Mr. Sellas that there were "inconsistencies" with his review, which meant he could expose "bias and wrongful termination," Mr. Sellas began "shouting at [him] and saying never mind all that." *Id.* At the end of their meeting, Mr. Sellas allegedly told Mr. McFadden he would

speak with the Head of Human Resource and would call Mr. McFadden later. *Id*. After about one week, Mr. McFadden allegedly called Mr. Sellas and was told to "just be patient." *Id*.

Around August 2017, Mr. Sellas allegedly told[2] Mr. McFadden about "a complaint against a member of the public violating the violence in the [workplace] act." *Id*. at 17. This was allegedly the first time since "October 19, 2016" that Mr. McFadden "ever heard about [the details of] an[] actual complaint." *Id*.

Mr. McFadden filed this lawsuit requesting payment of lost wages and an amended service rating, as well as the restoration of his state service time, pension, health care, and ability to transfer to other State jobs. *Id*. at 4.

**B. Procedural History**

On November 13, 2019, Mr. McFadden filed his *pro se* Complaint against Ms. Hobby, asserting grievances regarding his termination from employment at the DMV. Compl.

On March 9, 2020, Ms. Hobby filed a motion to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Mot; Mem. in Support of Def.'s Mot. to Dismiss, ECF No. 16-1 (Mar. 9, 2020) ("Def.'s Mem.").

On March 9, 2020, Ms. Hobby also filed a motion to stay discovery pending the resolution of the motion to dismiss. Mot. to Stay Disc., ECF No. 18 (Mar. 9, 2020); Def.'s Mem. of L. in Supp. of Mot. to Stay Disc., ECF No. 18-1 (Mar. 9, 2020).

[2] In his Complaint, Mr. McFadden states that his call inquiring about Mr. Sellas's communications with Human Resources was the "last communication [he and Mr. Sellas] ever had." Compl. at 16. Mr. McFadden also states that "Tom [S]ellas in the past [six] months since this situation has been going on has NEVER sent [Mr. McFadden] any documents or called [him] or done anything to update [him]." *Id*. at 17 (emphasis in original). Mr. McFadden, however, later states that around "August 2017[,] [Mr.] Sellas said [Mr. McFadden] had a complaint against a member of the public" and it "was the first time [Mr. McFadden] ever heard of any actual complaint detail." *Id*. Consequently, Mr. McFadden suggests that he communicated with Mr. Sellas at least one time after their call in March 2017.

On March 10, 2020, Ms. Hobby filed an amended motion to stay discovery pending the resolution of the motion to dismiss. Revised Mot. to Stay Disc., ECF No. 19 (Mar. 10, 2020); Def.'s Revised Mem. of L. in Supp. of Mot. to Stay Disc., ECF No. 19-1 (Mar. 10, 2020).

On April 7, 2020, this Court granted Ms. Hobby's amended motion to stay discovery pending resolution of the motion to dismiss and denied as moot the initial motion to stay filed by Ms. Hobby. Order, ECF No. 22 (Apr. 7, 2020).

On April 15, 2020, Mr. McFadden filed an objection to Ms. Hobby's motion to dismiss. Pl.'s Option to the Mot. to Stay Disc., ECF No. 23 (Apr. 15, 2020) ("Pl.'s Opp'n");[3] Mem. in Supp. of Pl.'s Opp'n to the Mot. to Dismiss, ECF No. 23-1 (Apr. 15, 2020) ("Pl.'s Mem.").

On April 23, 2020, Ms. Hobby filed a motion for an extension of time to reply to Mr. McFadden's objection to her motion to dismiss. Def.'s Mot. for Extension of Time to File Reply Br., ECF No. 24 (Apr. 23, 2020).

On April 24, 2020, the Court granted Ms. Hobby's motion for an extension of time and gave her until May 13, 2020 to file her reply. Order, ECF No. 25 (Apr. 24, 2020).

## II. STANDARD OF REVIEW

### A. Rule 12(b)(1)

Federal courts are "courts of limited jurisdiction." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotation mark omitted). "Congress has granted district courts original jurisdiction over . . . certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met." *Purdue*

[3] Although recorded on the docket as a motion to dismiss, and titled "Option," Plaintiff describes this filing as an opposition to the Defendant's motion to stay. *See* Pl.'s Opp'n. After reviewing the filing, the Court construes it as an opposition to Defendant's motion to dismiss. *See Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (Complaints filed by *pro se* plaintiffs, "must be construed liberally and interpreted to raise the strongest arguments that they suggest." (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006) (internal quotation marks omitted))).

*Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013). The burden of persuasion for establishing diversity jurisdiction rests on the party asserting it. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010); *see also Herrick Co. Inc. v. SCS Commc'ns, Inc.*, 251 F.3d 315, 322–23 (2d Cir. 2001) (the party asserting diversity jurisdiction "bears the burden of demonstrating that the grounds for diversity exists and that diversity is complete."). The party invoking the court's jurisdiction must support allegations of complete diversity with "competent proof." *Linardos v. Fortuna*, 157 F.3d 945, 947 (2d Cir. 1998). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006).

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). "When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court also may resolve disputed jurisdictional fact issues, however, "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

**B. Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Any claim that fails "to state a claim upon

which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal,* 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), a court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. A court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy*

*v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court also may consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

## III. DISCUSSION

As a preliminary matter, as noted by Ms. Hobby in her motion to dismiss, "[Mr. McFadden's] materials do not identify the legal basis for his claims." Pl.'s Mem. at 3. Consequently, Ms. Hobby construes Mr. McFadden's Complaint as asserting claims against her "in her individual capacity" under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60. *See id.* at 3-5.

The Court agrees.

In his opposition to Ms. Hobby's motion to dismiss, Mr. McFadden explains that as "an African American [m]an[,] [he] was intentionally discriminated against and wrongfully terminated as a state employee after 13 years of service." Pl.'s Opp'n at 20. As a result, the Court construes Mr. McFadden's Complaint as bringing a claim under Title VII as well as CFEPA for racial discrimination and a claim for wrongful discharge. *See Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

Ms. Hobby-Brame has moved to dismiss each of Mr. McFadden's claims by arguing that

> Title VII does not permit actions against individuals; [the] Title VII claim is untimely; [a]ny state law claim under [CFEPA] is barred by the Eleventh Amendment; [i]njunctive relief against an individual-capacity defendant is not permitted as a matter of law; and [t]he Complaint fails to meet the requirements of Rule 8 . . . .

*See* Def.'s Mem. at 1.

The Court will address each of Mr. McFadden's claims in turn.

**A. The Title VII Claim**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the U.S. Supreme Court established a burden-shifting framework to evaluate claims of employment discrimination and outlined the elements of a prima facie case. Consistent with this decision, in the Second Circuit, a plaintiff must show: (1) he is a member of a protected class; (2) he was qualified for his position; (3) he suffered an adverse employment action; and (4) there is "at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn v. City of N.Y.*, 795 F.3d 297, 311 (2d Cir. 2015). A plaintiff's burden for establishing a prima facie case is de minimis. *See Woodman v. WWOR–TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) ("We have characterized plaintiff's *prima facie* burden as 'minimal' and 'de minimis.'" (quoting *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001))).

In the initial pleading stage of litigation for a Title VII employment discrimination claim, an "allegation of facts supporting a minimal plausible inference of discriminatory intent suffices . . . because this entitles the plaintiff to the temporary presumption of *McDonnell Douglas* until the defendant furnishes its asserted reasons for its action against the plaintiff." *Doe v. Columbia Univ.*, 831 F.3d 46, 55 (2d Cir. 2016); *see also Dawson v. N.Y. City Transit Auth.*, 624 F. App'x 763, 770 (2d Cir. 2015) ("At the pleading stage, district courts would do well to remember th[e] exceedingly low burden that discrimination plaintiffs face . . . ."). The allegations need not give "plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311.

Claims under Title VII, however, cannot be brought against individuals. *See, e.g.*, *Littlejohn v. City of N.Y.*, 795 F.3d 297, 313 (2d Cir. 2015) ("Title VII does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." (internal quotation marks omitted) (quoting *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014))); *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII." (internal quotation marks omitted)); *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995), *abrogated on other grounds* ("We now hold that individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII.").

Also, under Title VII, "a plaintiff can sue in federal court only after filing timely charges with the EEOC." *McPherson v. N.Y.C. Dep't of Educ.*, 457 F.3d 211, 213 (2d Cir. 2006) (citing 29 U.S.C. § 626(d); 42 U.S.C. § 2000e-5(f)(1); *Holowecki v. Fed. Express Corp.*, 440 F.3d 558, 562–63 (2d Cir. 2006)). The complainant has 180 days from the adverse employment action to file charges with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1). Then, "the complainant must await dismissal of the administrative charge (or a failure to act)." *McPherson*, 457 F.3d at 214. Once the complainant receives a "right-to-sue" letter from the EEOC, the person has ninety days to file a civil action in the appropriate federal court. *See* 42 U.S.C. § 2000e-5(f)(1); *see also* *McPherson*, 457 F.3d at 214 ("Such notification is called a 'right-to-sue' letter because the notification is a prerequisite to suit (even though the notification does not indicate that all of the statutory prerequisites for suit have been met, and therefore does not bespeak a 'right')." (emphasis omitted) (quoting *NAACP v. Town of E. Haven*, 259 F.3d 113, 115 n. 4 (2d Cir.2001))).

As to Mr. McFadden's Title VII claim, Ms. Hobby argues that Mr. McFadden seeks to hold her individually liable, and not her employer. Def.'s Mem at 3 ("Title VII does not allow individual liability." (citing *Patterson*, 375 F.3d at 221; *Rodriguez v. Batista*, No. 19-CV-9206-GHW, 2020 WL 635661, at *2 (S.D.N.Y. Feb. 11, 2020); *Chylinski v. Bank of Am., N.A.*, No. CIV.A.308-CV-322 (JCH), 2008 WL 4738692, at *3 (D. Conn. Oct. 16, 2008))). Ms. Hobby also argues that Mr. McFadden's Title VII claims were not filed within ninety (90) days of a right-to-sue letter issued by the EEOC. Def.'s Mem. at 3-4 (citing *Hampton v. Judicial Branch*, No. 3:18-CV-1445 (VAB), 2019 WL 3337877, at *7 (D. Conn. July 24, 2019); *Francis v. Elmsford School District*, 442 F.3d 123, 126 (2d Cir. 2006)).

Mr. McFadden argues that his claims of discrimination can be brought against Ms. Hobby, as an individual, because he "filed a complaint with CHRO [that] [he] was retaliated against in the form of wrongful termination." Pl.'s Mem. at 2. He argues that "retaliation claims" can be brought against individuals. *Id.* at 3. Mr. McFadden also argues that a "four-year statute of limitations" applies to his claims. *Id.* at 4.

The Court disagrees.

The ability to bring a retaliation claim under Title VII does not change Mr. McFadden's inability to file such a claim against an individual. The Second Circuit has made clear that "Title VII does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Littlejohn*, 795 F.3d at 313 (internal quotation marks omitted).

As to the timeliness of Mr. McFadden's Title VII claim, while he cites to 28 U.S.C. § 1658, *id.* at 3, the critical language is at the beginning of the statute: a four-year statute of limitations is applicable "[e]xcept as otherwise provided by law," 28 U.S.C. § 1658(a). And under 42 U.S.C. § 2000e-5(f)(1), once Mr. McFadden received a "right-to-sue" letter from the

EEOC, he had ninety days to file a civil action in the appropriate federal court.[4] *See Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1847 (2019) ("Whether or not the EEOC acts on the charge, a complainant is entitled to a "right-to-sue" notice 180 days after the charge is filed. And within 90 days following such notice, the complainant may commence a civil action against the allegedly offending employer." (internal citations omitted)). In *Davis*, the Supreme Court found "Title VII's charge-filing requirement is a processing rule, . . a mandatory one . . . ." *Id.* at 1851. In other words, the statute of limitations must be met for a case to move forward. *See e.g., SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954, 960 (2017) ("When Congress enacts a statute of limitations, it speaks directly to the issue of timeliness and provides a rule for determining whether a claim is timely enough to permit relief.").

Mr. McFadden received two different notices from the EEOC, one on October 24, 2017, and the other on July 9, 2018, and yet he filed this lawsuit more than a year after the EEOC notices. As a result, his Title VII claim is not timely, even if he had sued the proper defendant.

Accordingly, Mr. McFadden's Title VII claims will be dismissed.

**B. Any State Law Claims**

Having dismissed Mr. McFadden's claims under federal law, the Court dismisses any claims Mr. McFadden may have under Connecticut law. "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction

[4] By alleging that he "filed a complaint with the CHRO," Compl. at 8, and "went to the CH[RO] and the EEOC, *id*. at 15, Mr. McFadden has effectively incorporated these documents into his pleadings with this Court, thereby allowing for the Court's consideration of them when adjudicating the motion to dismiss. *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir.1991) ("[W]hen a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim . . . ."); *see also Lynch v. City of N.Y.*, 952 F.3d 67, 79 (2d Cir. 2020) (same). Given that leave from the EEOC is essential in determining the futility of a claim brought before this Court, the Court finds it to be integral to the case and incorporated by reference. *See Thomas v. Westchester Cty Health Care Corp*, 232 F. Supp. 2d 273, 27 (S.D.N.Y. 2002) ("Documents that are integral to plaintiff's claims may also be considered, despite plaintiff's failure to attach them to the complaint.").

over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim," however, if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Supplemental or pendant jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1996). Where all federal claims have been dismissed before a trial, state claims generally should be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) ("[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remains, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice."); *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise supplemental jurisdiction over the remaining state-law claims.").

"Once a district court's discretion is triggered under § 1367(c)(3), it balances the traditional values of judicial economy, convenience, fairness, and comity." *Kolari*, 455 F.3d at 122 (2d Cir. 2006) (internal quotation marks omitted); *see also Catzin v. Thank You & Good Luck Corp.*, 899 F.3d 77, 83 (2d Cir. 2018) ("If one of the § 1367(c) categories applies, the district court may then undertake the discretionary inquiry of whether to exercise supplemental jurisdiction . . . . '[A] district court should not decline to exercise supplemental jurisdiction unless it also determines that doing so would not promote the values articulated in *Gibbs*:

economy, convenience, fairness, and comity.'" (quoting *Jones v. Ford Motor Credit Co.*, 358 F.3d 205, 214 (2d Cir. 2004))).

"In weighing these factors, the district court is aided by the Supreme Court's additional guidance in *Cohill* that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7); *see also Catzin*, 899 F.3d at 83 ("Under this prong, in a great many cases, the evaluation will usually result in the dismissal of the state-law claims.").

But as the Second Circuit recently emphasized, "[t]he principle that the elimination of federal-law claims prior to trial generally points to declining to exercise supplemental jurisdiction 'in the usual case' clearly does not mean that the balance of the factors always points that way." *Catzin*, 899 F.3d at 86. Thus, "[w]hen § 1367(c)(3) applies, the district court must still meaningfully balance the supplemental jurisdiction factors" of judicial economy, convenience, fairness, and comity before declining to exercise supplemental jurisdiction. *Id.*

Because the Court has dismissed this case's federal claim, "the Court must conduct the discretionary inquiry required under 28 U.S.C. § 1367(c) to determine whether it is appropriate to maintain jurisdiction over the remaining state-law claims." *Kleftogiannis v. Inline Plastics Corp.*, No. 3:18-CV-1975 (VAB), 2020 WL 3036026, at *8 (D. Conn. June 5, 2020).

The balance of factors here weighs in favor of declining to exercise supplemental jurisdiction. Principles of comity suggest Connecticut courts are more suited to determine the viability of CFEPA and wrongful discharge claims. Mr. McFadden's "claims may be vindicated, if at all, in state court under traditional state law principles." *Giammatteo v. Newton*, 452 F. App'x 24, 30 (2d Cir. 2011) (citing *Baker v. McCollan*, 443 U.S. 137, 146 (1979)).

Accordingly, the Court declines to exercise supplemental jurisdiction and will dismiss any state-law claims.

### C. LEAVE TO AMEND

Under Federal Rule of Civil Procedure 15(a),

> [a] party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier.

Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The district court has broad discretion to decide a motion to amend. *See Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998).

If a court chooses to deny leave to amend, however, it must give some "justifying reason" for doing so. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss [under] Fed. R. Civ. P. 12(b)(6)"); *Park B. Smith, Inc. v. CHF Indus. Inc.*, 811 F. Supp. 2d 766, 779 (S.D.N.Y. 2011) ("While mere delay, absent a showing of bad faith or undue prejudice, is not enough for a district court to deny leave to

amend, the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." (internal quotation marks omitted)).

But, where a party seeks leave to amend after the deadline to amend pleadings has passed, the court often has greater discretion to deny leave to amend. *See Lyddy v. Bridgeport Bd. of Educ.*, No. 3:06-CV-1420 (AHN), 2008 WL 5117679, at *1 (D. Conn. Dec. 4, 2008) ("In other words, when the court issues a pretrial scheduling order [under] Fed R. Civ. P. 16 that establishes a time table for amending pleadings, a plaintiff's ability to amend the complaint is governed by Rule 16, not Rule 15(a)." (citing *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007); *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000); *Carnrite v. Granada Hosp. Grp., Inc.*, 175 F.R.D. 439, 446 (W.D.N.Y. 1997))). In these cases, a moving party may be required to demonstrate that there is "good cause" both to amend the scheduling order and to amend their pleading. *See Parker*, 204 F.3d at 340 ("[D]espite the lenient standard of Rule 15(a), a district court does not abuse its discretion in denying leave to amend the pleadings after the deadline set in the scheduling order where the moving party has failed to establish good cause."). "[A] finding of 'good cause' depends on the diligence of the moving party." *Id.*

Because "Title VII's charge-filing requirement is a processing rule, [] a mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts," *Davis*, 139 S. Ct. at 1851, even if Mr. McFadden's filings were untimely for good cause, and the Court does not suggest they were, this Court could not extend the filing deadline.

Accordingly, Mr. McFadden's Complaint will be dismissed without leave to amend it.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED** with prejudice**.**

The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 30th day of March, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE